**Charlotte M. HARMER, Robert R. Harmer, Plaintiffs,**

**v.**

**DOCTOR'S ASSOCIATES, INC., d/b/a Subway, and Subway Restaurants, Inc., Defendants.**

**No. 91–CV–72676–DT.**

United States District Court, E.D. Michigan, S.D.

Dec. 20, 1991.

---

JoAnne Barron, Ann Arbor, Mich., for plaintiffs.

Sally L. Foley, Jeffrey A. Sadowski, Troy, Mich., for defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR ORDER TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS PENDING ARBITRATION

HACKETT, District Judge.

Defendants have filed a motion seeking an order to compel arbitration and a stay of proceedings in this case pending arbitration. For the reasons stated below, the court finds that defendants' motion should be granted.

### FACTUAL BACKGROUND

On November 8, 1988, plaintiffs and defendant Doctor's Associates, Inc. entered into a Franchise Agreement. Under the terms of this agreement the parties agreed to submit disputes to arbitration. Paragraph 10(c) of the Franchise Agreement provides:

> Any controversy or claim arising out of or relating to this contract or the breach thereof shall be settled by the American Arbitration Association at a hearing to be held in Bridgeport, Connecticut and judgment upon an award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof. The commencement of Arbitration proceedings by an aggrieved party to settle disputes arising out of or relating to this contract is a condition precedent to the commencement of legal action by either party. The cost of such a proceeding will be borne equally by the parties.

On April 26, 1989, Frank J. Kelley, Attorney General for the State of Michigan, filed an action in the Ingham County Circuit Court against defendants in this case for violations of the Michigan Franchise Investment Law, M.C.L. § 445.1501 et seq. On September 5, 1989, defendants entered into a consent judgment with the state, which provides that defendants would offer rescission to all Michigan franchisees to whom they had sold a franchise using a non-conforming Uniform Franchise Offering Circular (UFOC).

Defendants had sold plaintiffs their franchise using a non-conforming UFOC. On May 14, 1990, plaintiffs demanded recision of their franchise agreement. On May 25, 1990, defendants sent the letter required by the consent judgment to plaintiffs. The letter offers to help sell the franchise if the franchisees no longer wish to be in the Subway business. The letter further states: "If you are not able to sell your franchise within one year, we will either purchase it, or make you a recision offer pursuant to Section 31 of the Michigan Franchise Investment Law." On June 20, 1990, plaintiffs notified defendants that they no longer wished to be in the Subway business.

On September 13, 1990, the parties entered into an Agreement for Sale of Fran-

chise. The consideration for this agreement was that plaintiffs were willing to terminate the Franchise Agreement and allow defendants to enter into a franchise agreement with the purchasers of the franchise.

Following the execution of the sale agreement, disagreements between the parties arose. In May, 1991, plaintiffs filed a five-count complaint against defendants in Washtenaw County Circuit Court. Count I of the complaint seeks recision pursuant to state statute. Count II alleges breach of contract. Count III alleges fraud under the Michigan Franchise Act. Counts IV and V allege failure of the defendants to comply with provision of the consent judgment entered between the state and defendants in the Ingham County Circuit Court action. On June 4, 1991, defendants removed the Washtenaw County action to this court on the basis of diversity jurisdiction.

## DISCUSSION

Relying primarily on the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*, and *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), defendants contend that the issues raised in the instant action are arbitrable and that the court should enter a stay pursuant to 9 U.S.C. § 3 and compel the parties to arbitrate pursuant to the authority granted in 9 U.S.C. § 4.

Plaintiffs oppose the motion, contending that the instant action is not arbitrable, as it is beyond the scope of the arbitration clause in the Franchise Agreement. Plaintiffs argue that their complaint arises out of a separate and collateral agreement of rescission between plaintiffs and defendants, which does not contain an arbitration clause. Plaintiffs assert that because the Franchise Agreement was rescinded and terminated by agreement of the parties, that there is no existing agreement between the parties which contains an arbitration clause.

It is not disputed that the United States Arbitration Act is applicable to the arbitration clause in the Franchise Agreement. The Act, in pertinent part, provides:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition to any United States district court ... for an order directing that such arbitration proceed in a manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.... If the making of the arbitration agreement or the failure, neglect or refusal to perform the same is in issue, the court shall proceed summarily to the trial thereof....

9 U.S.C. § 4.

■ The Act "embodies a clear federal policy of requiring arbitration unless the

agreement to arbitrate is not part of a contract evidencing interstate commerce or [the agreement to arbitrate itself] is revocable 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Perry v. Thomas,* 482 U.S. 483, 489, 107 S.Ct. 2520, 2525, 96 L.Ed.2d 426 (1987) (quoting 9 U.S.C. § 2). A party may not, however, be compelled to arbitrate unless that party has agreed to arbitration of disputes.

■ In *Prima Paint, supra,* the United States Supreme Court held that in considering an application for a stay under section 3 of the Arbitration Act, "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate." 388 U.S. at 404, 87 S.Ct. at 1806. A federal court is to order arbitration if the making and performance of the agreement to arbitrate itself is not in dispute. *Board of County Com'rs of Lawrence County v. L. Robert Kimball and Associates,* 860 F.2d 683, 685 (6th Cir.1988), *cert. denied,* 494 U.S. 1030, 110 S.Ct. 1480, 108 L.Ed.2d 617 (1990). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983).

Section 4 of the Arbitration Act requires the court to engage in a limited review. The first step of that review is to determine if a valid agreement to arbitrate exists between the parties. If a valid arbitration agreement exists, the court must determine if the specific dispute falls within the substantive scope of the agreement. *Painewebber Inc. v. Hartmann,* 921 F.2d 507, 511 (3d Cir.1990) (citing *AT & T Technologies v. Communications Workers of America,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986); *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 546–47, 84 S.Ct. 909, 912–13, 11 L.Ed.2d 898 (1964); other citations omitted).

Plaintiffs argue that the rescission agreement is the only remaining agreement between the parties and that it is collateral to and outside the scope of the Franchise Agreement arbitration clause. In *Prudential Lines, Inc. v. Exxon Corp.,* 704 F.2d 59 (2d Cir.1983), the court utilized a two-part test to examine the scope of the agreement to arbitrate when the issue of a collateral agreement is presented. "Two inquiries must be made by the district court at the outset: (1) is the arbitration agreement broad or narrow?; (2) if narrow, does the dispute involve a 'collateral' agreement?" *Id.* at 63.

[A] court should compel arbitration and permit the arbitrator to decide whether the dispute falls within the clause, if the clause is "broad". In contrast, if the clause is "narrow", arbitration should not be compelled unless the court determines that the dispute falls within the clause. Specific words or phrases alone may not be determinative, although words of limitation would indicate a narrower clause. The tone of the clause as a whole must be considered.

*Id.* at 64.

The court determined that the two arbitration clauses at issue in that case were narrow. One of the clauses was "specifically limited to disputes regarding 'responsibility for repairs, renewals or replacements, or as to the condition of the vessel at the redelivery.'" *Id.* at 64 n 5. The other clause pertained to disputes that arose under the charter agreement. *Id.*

"If a court finds that the parties have agreed to submit to arbitration disputes 'of any nature or character,' or simply 'any and all disputes,' all questions, including those regarding termination will be properly consigned to the arbitrator...." *Rochdale Village, Inc. v. Public Service Employees,* 605 F.2d 1290, 1295 (2d Cir.1979). In that case, the agreement between the parties required arbitration of "any and all disputes hereunder." *Id.* at 1296. The court held that the inclusion of the word "hereunder" served to narrow the arbitration clause. *See, IBEW v. Freedom WLNE-TV, Inc.,* 760 F.2d 8 (1st Cir.1985) (arbitration clause providing that "[a]ll problems arising out of grievances or out of the application or interpretation of this agreement or the performance of any party

under it" found to be broad); *Roso–Lino Beverage Distributors, Inc. v. Coca–Cola Bottling Co.*, 749 F.2d 124 (2d Cir.1984) (agreement requiring arbitration of all disputes except those relating to "revision of price and deposit requirements or to the Distributor's markup" is broad); *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co.*, 767 F.2d 1140 (5th Cir.1985) (agreement providing that parties would submit "any dispute or difference between the parties" to arbitration is broad type of clause).

The arbitration clause at issue in this case requires arbitration of "any controversy or claim arising out of or relating to this contract or breach thereof". Plaintiffs argue that this language, while appearing to be broad, contains limiting language which requires the court to construe it as narrow. Plaintiffs contend that since arbitration is only applicable to disagreements "arising out of or relating to the contract," that it is limited.

The court finds plaintiff's position untenable. The language of the arbitration clause of the Franchise Agreement must be viewed as broad. In addition, it must be viewed as applicable to the present controversy. Given the broad language of the arbitration clause, the dispute is within the scope of the clause in that the dispute arises out of the contractual relationship of the parties.

Plaintiffs further argue that because the Franchise Agreement was rescinded and terminated by agreement of the parties that there is no existing agreement and, therefore, no existing arbitration clause. The question of whether the franchise agreement was rescinded is a disputed question of fact. For purposes of this motion, however, it need not be resolved and the court will accept the plaintiffs' allegation, that it was rescinded, as true.

"Although it is created by contract, the duty to arbitrate does not necessarily end when the contract is terminated." *Aspero v. Shearson American Exp., Inc.*, 768 F.2d 106, 108 (6th Cir.), *cert. denied*, 474 U.S. 1026, 106 S.Ct. 582, 88 L.Ed.2d 564 (1985). In *Clifton D. Mayhew v. Mabro Const.*

*Inc.*, 383 F.Supp. 192 (D.D.C.1974), the court addressed the issue of whether a dispute arising out of contract containing an arbitration clause can be referred to arbitration if it is claimed that the parties mutually cancelled the contract. The court noted that the United States Supreme Court has held "that disputes concerning the validity of the whole contract must be separated from disputes relating specifically to the arbitration agreement, and only the latter should be considered by the courts before being referred to arbitrators." *Id.* at 194 (citing *Prima Paint*, 388 U.S. at 404, 87 S.Ct. at 1806). Applying *Prima Paint*, the court held:

> It is also true that parties can agree to terminate or cancel an arbitration agreement; and if such were alleged to have occurred in this case, there would still have to be a trial on that issue and a determination that the arbitration agreement were still in effect before this Court could issue a stay of proceedings or an order to arbitrate. However, the procedure is not the same when a party alleges that the entire contract was cancelled. The holding of the Supreme Court in *Prima Paint* indicates that such issues are for arbitrators and not for federal courts to decide.

383 F.Supp. at 195.

Plaintiffs' argument in this case is that the entire contract has been rescinded. Consequently, it is an argument for the arbitrators and not the court. Accordingly,

IT IS ORDERED that defendants' motion for an order to compel arbitration and to stay the proceedings pending arbitration hereby is GRANTED.